JONES *v.* BARKER and others.   (No. 166.)

BARKER and others *v.* JONES.   (No. 170.)

SAME *v.* SAME.   (No. 246.)

*(Circuit Court, D. Maine.   March 24, 1882.)*

1. PATENTS—PUBLIC USE.
   Public use, in the sense of the patent law, is proved by a single use by any person not the inventor, or by the inventor in an open way, provided the use is not experimental.

2. SUITS ON REISSUES—EXPIRATION OF PATENTS.
   A suit begun on one patent cannot be maintained on a reissue of that patent; but, if a bill is filed on an existing patent which expires during the progress of the suit, an account may be ordered without an injunction.

3. REISSUE—ENLARGING CLAIMS.
   A claim may be enlarged in a reissued patent, but this can only be done when an actual mistake has occurred, not from mere error of judgment, but a *bona fide* mistake inadvertently committed, such as a court of chancery, in cases within its ordinary jurisdiction, would correct, and such reissue must be applied for without delay.

LOWELL, C. J.   These three cases, argued together, relate to patents for cutting green corn from the cob for the purpose of packing it in cans.   Isaac Winslow, the uncle and predecessor of J. W. Jones, appears to have invented or introduced this industry, which has become of much importance.   It was found that his process was substantially that by which other vegetable substances had been preserved, and so he lost his patent for the process.   In describing his process he described a curved knife with a gauge as a convenient instrument for cutting the corn from the cob, and about 12 years afterwards he obtained the patent No. 51,379, now owned by Jones, who himself patented an improvement in the gauge, No. 54,170, also sued upon.   One Lewis obtained a patent for a machine to cut corn, No. 94,013, which has been assigned to Jones.   These are the three patents relied on in suit No. 166.   The circuit court, sitting in Maryland, decided that the knife patents were void for want of novelty. *Jones* v. *McMurray*, 2 Hughes, 527.   In this case the Winslow knife is known to have been invented a very long time, more than 20 years, before it was patented, which might relieve it from the charge of want of novelty; but it is shown to have been used publicly, with Winslow's consent, more than two years before his application in 1865.   Public use, in the sense of the patent law, is proved by a

single use by any person, not the inventor, or by the inventor in an open way, provided the use is not experimental. I have considered this question with great care in former cases, and will merely refer to them and to the latest decision of the supreme court. Under these decisions there can be no doubt that the Winslow knife was in public use for years before 1865.

The Jones patent was held, in the case first above cited, to be anticipated by the Oot paring knife, patented in 1858, No. 21,695, and I see no reason to doubt the soundness of the decision. At all events, it reduces the patent to so narrow a claim that it cannot be infringed by the knives of the Barker machine.

The Lewis machine is admitted to be very crudely and imperfectly described in his specification—so much so that application was made to me to suspend this case until a reissue could be obtained. This I refused, for the reason, among others, that a suit begun upon one patent could not be sustained upon a reissue of that patent. Upon a preponderance of the evidence I am strongly inclined to think that a mechanic, skilled in the art of making similar machinery, could not make one of Lewis' machines.

It was said incidentally, at the argument, by the counsel for Mr. Jones, that a reissue has already been obtained. The record contains no similar statement; but if this is so I do not see how an injunction or account could be ordered without error. It is true that if a bill is filed on an existing patent, and it expires during the progress of the suit, an account may be ordered without an injunction; but the surrender of a patent is an admission of the most solemn character that it is defective or inoperative; and when the patent is cancelled and a new one is obtained there is but one patent remaining, and that is the new one; for the same invention, indeed, but my decree must rest upon the patent and not on the mere invention. I ought to add that, in view of the state of the art, Lewis' claims cannot be construed to include the Barker machine.

No. 246, though last in order of time, I will consider next. It rests upon the patent of Burt & Dunn, dated June 19, 1866, No. 55,614, which appears to have been bought in the course of this litigation, and then to have been reissued. In the original specification the invention is said to consist of a series of cutters, scrapers, and guides, attached to a tube and used in connection with a sliding frame provided with an adjustable center rod; all being arranged as thereinafter set forth. The arrangement made the frame slide upon rods, which caused the cutters to expand when the frame was pushed

forward. The two claims were (1) for whole combination, and (2) for the rods.

It is plain that the rods and sliding frame were considered by the inventors to constitute the chief novelty in the machine. I find it to be proved that a machine of this sort was successfully used by the patentees, but that the operation of the rods and sliding frame, though ingenious and useful, limited the mechanism so that a single machine could not be adapted to all the various sizes of ears of corn. The later inventions, which the plaintiffs seek to stop by their reissue, dispense with the rods and frame, and cause the cutters to expand by the cob itself. The defendants do not infringe either of the original claims.

In the reissue the two claims are expanded into eight, intended and calculated to cover all combinations of cutters and scrapers in a machine of this sort. They are qualified by the words "operating substantially as described;" but, as all cutters and scrapers must be so arranged as to act upon the whole surface of an ear of corn, no great variation is possible. The excuse for this enlargement of the claims is that Burt & Dunn were the first persons who made a machine which effected the purpose of cutting and scraping an ear of green corn at one operation. Under former decisions of all the courts this argument might perhaps be accepted, though the expansion is very considerable; but the supreme court have lately restored the law to what they find to have been the true meaning of the act of congress authorizing reissues. *Miller* v. *Bridgeport Brass Co.* 21 O. G. 201. In summing up the conclusions of the court in that case Mr. Justice Bradley says, (page 203:)

"Now while, as before stated, we do not deny that a claim may be enlarged in a reissued patent, we are of opinion that this can only be done when an actual mistake has occurred, not from a mere error of judgment, (for that may be rectified by appeal,) but a real *bona fide* mistake, inadvertently committed, such as a court of chancery, in cases within its ordinary jurisdiction, would correct."

He goes on to show the danger and injustice to others of such enlargements, and says that they must be applied for at once before new inventions have been made. He intimates that two years, in analogy to the law of forfeiture, would be the utmost possible limit of time; but, as I understand the opinion, that anything like two years would be inadmissible in ordinary cases.

This reissue was obtained 13 years after the patent was granted, and is open to all the objections pointed out in the general reasoning

of the opinion, though the case itself is not exactly like the principal one.

This bill must be dismissed.

No. 170. This case is brought upon the patent issued in 1875, No. 159,741. The machine of Barker has been found much more useful than any which preceded it; but the defendant contends that the patent is void, because it differs from its predecessors only structurally, and that the specification does not sufficiently acknowledge the state of the art, and therefore appears to claim altogether too much. It is true that several machines, besides those of Burt & Dunn, and of Lewis, had been patented before Barker; and that they all contain the similar elements of cutters and scrapers, and a rod to force the corn forward, and that Barker takes no notice of any of these machines. But though patentees must, at their peril, know all that has gone before in the art, yet this is a conclusive presumption rather than a fact; and if they do not have this knowledge, or do not especially exclude, either by name or otherwise, all previous inventions, which in many arts would be impracticable, yet it is allowable to construe the claims of a patent with reference to what has gone before, and to give the patentee the benefit of the restricted claim which results from such construction. So construed, I consider it quite clear that Barker's claims are valid. I adopt, without recapitulating them, the views, in the main, of his expert, Mr. Shepard, on this point. Indeed, it is only by assuming that the claims are to have a very broad construction that the defendant and his expert make them void. Even with the narrowest construction the defendant infringes all but the second claim. He intended to make a machine like Barker's, I think, if he could not invent substantial differences. He has made some changes, but they are additions rather than substitutions. If it were true, as the defendant believed it to be, that Barker infringed Lewis, it would not follow that the owner of the Lewis patent had a right to infringe Barker.

I am aware that in one particular the machines made and used and sold by Barker differ from his specification, and that the defendant adopts this variation; but, upon the evidence, I must hold that this was only a difference of construction.

No. 170: Decree for complainant. No. 166: Bill dismissed. No. 246: Bill dismissed.