HORTON MFG. CO. v. WHITE LILY MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. November 19, 1913.)

No. 1995.

1. PATENTS (§ 167*)—SCOPE—FEATURES NOT CLAIMED.

If the mechanism described in a patent in itself discloses the principal advantageous feature of the invention, it is not necessary that it should be claimed in specific terms.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 64*)—ANTICIPATION—PENDING APPLICATIONS BY PATENTEE.

For the purposes of anticipation by another patent the date of issue controls, and a claim of the principal feature of the invention covered by a patent by the patentee in prior applications, which were still pending when such patent issued, does not constitute an anticipation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 79; Dec. Dig. § 64.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—GEARING FOR WASHING MACHINE.

The Victor patent, No. 863,120, for gearing for washing machines, the principal feature of which is the relieving of the tub cover of the load of the operating mechanism, and thus reducing its weight when raised to a negligible quantity, was not anticipated, and discloses patentable invention; also held infringed by the device of the Van Wormer patent, No. 939,645.

4. PATENTS (§ 167*)—CONSTRUCTION—SCOPE.

The scope of a patent must be ascertained from the entire instrument, and, although a claim cannot be enlarged by the language of the specification, it may be illustrated thereby.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

5. PATENTS (§ 324*)—SUIT FOR INFRINGEMENT—MOTION TO STRIKE OUT EVIDENCE.

A motion in an infringement suit to strike out evidence not pertinent to the issues contested on final hearing, at complainant's costs, is addressed to the discretion of the trial court, and cannot be entertained by an appellate court.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*]

Appeal from the District Court of the United States for the District of Indiana; Albert B. Anderson, Judge.

In Equity. Suit by the White Lily Manufacturing Company against the Horton Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed.

Appellee brought suit for infringement of its patent, No. 863,120, granted to A. F. Victor on August 13, 1907, on application filed May 29, 1907, for im-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

provements in gearing for washing machines. Validity and infringement were decreed by the District Court.

The device of the patent employs the ordinary well-known means for obtaining oscillatory or rotary and reciprocal movement of the dolly or stirrer shaft. The patentee says: "The object of my invention is to utilize the momentum of a fly-wheel to assist in the operation of the lever by which said stirrer shaft mechanism is actuated." The patent in suit locates the lever, gear wheel, and fly-wheel upon a supporting plate at the side of the tub. On April 6, 1907, the same patentee had filed two applications, and on March 6, 1907, another application, all covering the same idea, wherein the fly and gear wheels were located under the tub. Patents were issued upon these on May 5, August 11, and 25, respectively, 1908. In all of them only the driving and stirrer shafts are carried upon the lid. The several devices thus provide means whereby the lid may be lifted without much effort and without interrupting the impetus of the fly-wheel. At the convenience of the operator the lid may be again lowered into meshing connection with the rack upon the lever, and thereby resume the connection with the fly-wheel's stored up momentum. All the elements of the device are old, even the location on the side of the tub, as in Shaffer patent, No. 657,838, of September 11, 1900, so that whatever of invention exists must be found in the combination and relative location of the parts to each other.

It was old to employ fly-wheels and speeding up gears in connection with the operation of wash tubs. Ruthven in 1900 and 1904, and Christensen in February, 1907, and others, had applied this well-known means of supplying power, to the wash-tub art. While the patentee claims invention in other details of his arrangement of the parts, he rests his claim to invention mainly upon the fact that the lid of the tub is relieved of the heavy load imposed upon it by the prior art devices, and upon the provision for a so-called line of cleavage, brought about by the fact that the meshing of the spur on the outer end of the drive shaft with the segmental-rack upon the lever handle is such that by the mere raising of the lid the two are thrown out of mesh and again brought into mesh by the lowering of the lid. Thus all that the operator has to lift is the lid of the tub, the stirrer shaft and the horizontal driving shaft. By this means the movement and momentum of the rest of the gearing, including that of the fly-wheel, is not suspended or the headway lost.

Concerning his device the patentee (lines 26 to 71 inclusive) says:

"In the drawings A represents a circular or other suitably shaped tub, supported by legs, and having a cover B closing its top, that is hinged to the straight edge of a permanent strip b.

"A vertical stirrer shaft C is journaled in the center of the cover, having its lower portion, extending into the tub, provided with a suitable stirrer-head (shown in dotted lines in Fig. 2 of the drawings), and the portion above the cover provided with beveled pinion c, that is engaged by a beveled gear d on the adjacent end of a horizontally disposed drive-shaft D, which latter is journaled in standards secured to and arising from the screw-plate of the supporting-frame a. Shaft D extends beyond the edge of the cover a short distance, and is provided with a spur-gear E, the lowest segment of which, when the cover is down, is engaged by a segmental-rack e, that is secured to and made integral with a vertically disposed lever F. Lever F is fulcrumed at its lower end, near the bottom edge of the tub, to a vertically elongated supporting-plate G, which latter, preferably, just below its center of height, is provided with an outwardly projecting bearing-stud g, on which is journaled a fly-wheel H of sufficient diameter, substantially as shown. The inner end of the boss of this fly-wheel is elongated and provided with a pinion h, which is, preferably, integral therewith. Between the top of the tub and said stud g, supporting-plate G is provided with another outwardly projecting bearing-stud j, upon which a large gear J is journaled. This gear is actuated by the lever F, and is adapted to engage the pinion h and revolve the fly-wheel at a comparatively high speed. In order to enable said lever to actuate gear J, I provide the lever with a vertically elongated slot k, and provide gear J with a wrist-pin K, which projects outwardly from one of its arms, through the said slot k. The slot k is of a length corresponding to the diameter of the

perimeter of the wrist-pin, and as said lever is moved back and forth it, through the medium of said wrist-pin, revolves the gear $J$. In order to avoid interference with pinion $h$, I provide the lever, below said slot, with a transversely elongated open frame $M$. The longitudinal sides of this frame are, preferably, struck from the center of the fulcrum of the lever, and are sufficiently far apart to clear the said pinion $h$ as the lever is moved back and forth."

Figure 2 of the drawings is as follows, viz.:

The four claims of the patent here in suit read as follows:

Fig. 2.

"1. In a mechanical movement for washing machines, a vertical rotary reciprocal stirrer-shaft, a rotary reciprocal drive-shaft the axis of which is at an angle thereto, and a pinion at the end thereof opposite said stirrer-shaft, in combination with a vertically disposed lever of the second class, a segmental-rack carried thereby and engaging said pinion, a fly-wheel the axle of which is parallel to that of said drive-shaft and means for transmitting the motion of said lever to said fly-wheel.

"2. In a mechanical movement for washing machines, a vertical rotary stirrer-shaft, and a horizontally disposed drive-shaft connected to the same, in combination with a vertically disposed lever of the second class actuating said drive-shaft, a fly-wheel the axis of which is parallel to that of said drive-shaft, and means for transmitting the motion of said lever to said fly-wheel.

"3. In a mechanical movement for washing machines, a vertical rotary reciprocal stirrer-shaft, a rotary reciprocal drive-shaft, the axis of which is at an angle thereto, and a pinion at the end thereof opposite said stirrer-shaft, in combination with a vertically disposed lever of the second class, a segmental-rack carried thereby and engaging said pinion, a fly-wheel the axis of which is parallel to that of said drive-shaft, and a gear the axis of which is parallel to that of said fly-wheel for transmitting the motion of said lever to said fly-wheel.

"4. In a mechanical movement for washing machines, a vertical rotary stirrer-shaft, and a horizontally disposed drive-shaft connected to the same, in combination with a vertically disposed lever of the second class actuating said drive-shaft, a fly-wheel the axis of which is parallel to that of said drive-shaft, a gear the axis of which is parallel to that of said fly-wheel for transmitting the motion of said lever to said fly-wheel."

It will be noted that the patentee nowhere enumerates the "line of cleavage," so-called, as one of the advantages, and the chief one, which his device in suit presents. He lays particular stress upon the service of the fly-wheel in the specification. It was only in his rebuttal that appellee's expert developed the theory or feature of the line of cleavage. In his patent No. 887,022, granted May 5, 1908, the operation of lifting out of and restoring the driving shaft gear to mesh with the rack or segmental gear upon the lever is described at lines 61 to 62, col. 1, p. 2. In a letter written May 18, 1907, by the patentee to appellee he refers to his device as "the only washing machine in the world that will open or close with the mechanism running at full speed." This was prior to the filing of the application for the patent in suit. Some time during January, 1907, the patentee disclosed the device to the secretary of appellee, who directed him to proceed to manufacture a wash-tub device in accordance with the sketches. The exhibit "white flyer," later termed "white washer," made some time in January or February, 1907, wherein the fly-wheel is located under the tub, was the result.

It is appellant's contention that, not having specifically described or claimed this line of cleavage feature in the patent sued on, the patentee may not rely upon the means for effecting that result as a part of his invention. As will be seen from claims 1 and 3 of the patent, the patentee produced a mechanical arrangement which in itself disclosed the line of cleavage. No prior patent for a lever operated device covered it, although patentee had filed an application prior to that for the present patent which did in terms disclose it as above set out.

Appellee made little use of this device of the patent in suit in the exact form shown in the patent. It was found advantageous to substitute a link and crank for the slot and crank pin used by the patentee in driving the fly-wheel. Plagman, appellee's foreman, took out patent No. 895,585 on August 11, 1908, which covered the use of the link and crank, which device was thereafter used by appellee. Counsel for appellee says of this change: "The Victor slot has to be made by a milling operation, and this must be done by skilled mechanics on a milling machine, whereas the link construction of Plagman calls only for a drilling operation, and this can be done by boys." Figure 2 of this patent is here reproduced:

Fig. 2.

It will be noticed that Plagman locates his fly-wheel under the tub.

Appellant manufactures what it calls its spinner machine, under patent No. 939,645, granted to A. Van Wormer on November 9, 1909, for gearing for washing machines. Its lever is operated by an up and down pumping movement instead of the backward and forward movement of the patent in suit. It employs a somewhat different and less effective arrangement of the lever. Appellant lays stress upon the claim that it does not employ the lever of the second class exclusively, which appellee, so appellant avers, is limited to under the claims in suit, but does employ for the operation of its fly-wheel a lever of the first class, and for its drive-shaft part of the time a lever of the second class and part of the time a lever of the first class. Its fly-wheel and speeding gear are attached to and carried by a plate upon the side of the tub. Figure 1 of the Van Wormer patent is here shown:

Fig. 1

Appellant, in its advertising, made much of the line of cleavage idea. This seems to have been done without actual knowledge of appellee's patent. About the time the suit was begun appellant changed its manufacture to a device which it called "Miracle Washer." It was attempted by appellee to draw this device into the case notwithstanding no such washing machine was actually manufactured, sold, or used prior to the filing of its bill. On objection made, appellee withdrew it prior to the entry of the final decree. Appellant made this withdrawal a basis for its motions presented before the entry of the decree, viz.: First, that the court make a finding that said Miracle machines do not in-

fringe the claims as charged; or, second, that the court sustain appellant's motion made at the hearing to strike out all proofs offered with regard to said Miracle machines, at appellee's costs, with respect to said claims 2 and 4 in suit. This objection to the taking of the evidence was made at the time the testimony was taken, on August 31, 1911. No disposition of this motion was made by the court other than what is embraced in the final decree.

Appellant insists that appellee failed to give it any notice of its claim of infringement. It may be gathered from the record that Van Wormer was not advised of the Victor patent when he filed his application, i. e., January 13, 1908, although it had been issued some five months before. The examiner cited it, and Van Wormer thereupon revised his claims. It does not appear from the evidence that the machines were marked. The answer denies the allegations of notice contained in the bill, and no evidence was taken to show direct notice. The appellee relies upon the said citation by the examiner and the further fact that a Mr. Lane, representing the Iowa Washing Machine Company, claimed appellant was infringing some of its patents, and furnished a list thereof by numbers, among which was No. 863,120. the patent in suit. The Iowa company is not shown to have had any connection with appellee. About a month before suit was begun appellant's president wrote appellee's lawyers that the question of infringement had been turned over to appellant's attorneys. This date, i. e., August 25, 1910, is the earliest date we are able to fix positively for the purposes of this hearing.

The errors assigned cover: First, the decree of the court finding the claims in suit to be valid and infringed; and second, the failure of the court to grant said motions. Other facts appear in the opinion.

Taylor E. Brown and Clarence E. Mehlhope, both of Chicago, Ill., for appellant.

Wallace R. Lane and Arba B. Marvin, both of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] In support of its claims, appellee sets up the end accomplished, viz., the adjustment of the parts of its device in such a manner as to produce a lever operated gear arrangement which relieves the tub cover of the load imposed by the prior art and provides a detachable connection between the lid with its stirrer-shaft and driving arm on the one hand, and the lever with its fly-wheel, speeding gear, and other heavy operating parts on the other hand. In practice it often becomes necessary to lift the tub lid in order to put in or take out articles, and for other purposes. Inasmuch as the operator is generally a woman, it is important that the burden attending that operation be minimized. If appellee's patent was the first to provide a lever operated gear for a wash tub which reduced the weight of the lid to a negligible quantity, he made such an addition to that art as amounted to invention. It was not necessary that he should have claimed it in specific terms if the device itself disclosed it. In Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527, the court says:

"He [the patentee] must not put forth a puzzle for invention or experiment to solve, but the description is sufficient if those skilled in the art can understand it. * * * It is no concern of the world whether the principle upon which the new construction acts be obvious or obscure, so that it inheres in the new construction."

This court said in Kuhlman Electric Co. v. General Electric Co., 147 Fed. 712, 78 C. C. A. 100:

"A patentee is entitled, not only to what he specifically sees, but to what has been brought about by his invention, even though not at the time actually seen."

The rule is well elaborated by the Circuit Court of Appeals for the Eighth Circuit in National Hollow Brake-Beam Co. et al. v. Interchangeable Brake-Beam Co., 106 Fed. 693-709, 45 C. C. A. 544.

[2, 3] The contention of appellant that the same patentee had claimed this feature as a result of other and different arrangements of elements for which he had filed application for patents prior to the filing of the application in the present case is not deemed of weight. The patent in suit was granted prior to the grant upon any one of the prior applications. The patentee, as between applications pending at the same time, was at liberty to choose which should first go to a patent. For the purpose of anticipation, the date of issue controls. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Gray Telephone Pay Station Co. v. Baird Mfg. Co., 174 Fed. 417, 98 C. C. A. 353; Barnes Automatic Sprinkler Co. v. Walworth Mfg. Co., 60 Fed. 605, 9 C. C. A. 154. As between his different applications, the question of prior invention could not arise. Appellant, however, asserts that the above result, which is termed a line of cleavage, is found in the prior art, and cites some 44 patents and 49 public uses. Of these, appellant's expert McElroy mentions particularly three, i. e., Ruthven patent No. 759,554, issued May 10, 1904, Christensen's patent, No. 845,615, issued February 26, 1907, and Mammen's patent, No. 874,095, issued December 17, 1907. The greater part of the other patents cited are too late for the purposes of anticipation. An examination of the three patents above enumerated discloses such difference in arrangement and adjustment as makes them in our judgment unavailable for purposes of anticipation of the claims in suit. Ruthven locates his gearing upon the cover and has no use for the pinion on the end of the drive shaft, nor for its cooperating element, the segmental-rack carried on the lever handle. The whole weight of the operating machinery must be lifted whenever the lid is raised. This is the very feature which the patent in suit seeks to avoid and makes the Ruthven patent unavailable as an anticipation. The same objection applies to the Christensen patent. The lid carries the whole operating means. Mammen's patent also, even if prior to the patent in suit, would not anticipate, for the reason that its lid carries the heavy load of the operating means. In this patent, also, there is no speeding up gear. It is, however, too late for purposes of anticipation, not having been issued until after the date of issue of the patent in suit. Of the prior public uses, we deem none of a character to require discussion.

Appellant insists that claims 2 and 4 in suit do not come within the construction herein given to the patent. Taken in connection with the drawings and specification, all four of the claims in suit call for a device in which the so-called line of cleavage, and the cover freed from

the burden of the operating mechanism, are essential elements. "The object of the patent law," says the Supreme Court in Topliff v. Topliff, 145 U. S. 171, 12 Sup. Ct. 831, 36 L. Ed. 658, "is to secure to inventors a monopoly of what they have actually invented or discovered, and it ought not to be defeated by a too strict and technical adherence to the letter of the statute." While claims 2 and 4 do not in terms call for the pinion at the outer end of the drive-shaft and the segmental-rack on the lever handle, those features may, for the purpose of restricting the claim so that it shall meet the requirements of the inventive idea, be gathered from the specification. "The subject is to be examined in the light of both specifications and of both sets of claims," says the Supreme Court in Klein v. Russell, 19 Wall. 433–466, 22 L. Ed. 116, in speaking of the scope of a claim, and, proceeding, says: "The court should proceed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee himself, if this can be done consistently with the language which he has employed."

[4] The scope of a patent must be ascertained from the entire instrument. Burke v. Partridge, 58 N. H. 351. Though a claim may be illustrated it cannot be enlarged by the language of the specification. R. R. Co. v. Mellon, 104 U. S. 118, 26 L. Ed. 639; Yale Lock Co. v. Greenleaf, 117 U. S. 554, 6 Sup. Ct. 846, 29 L. Ed. 952; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 414, 28 Sup. Ct. 748, 52 L. Ed. 1122.

"It is allowable," says Judge Lowell in Jones v. Barker (C. C.) 11 Fed. 600, "to construe the claims of a patent with reference to what has gone before, and to give the patentee the benefit of the restricted claim which results from such construction." Thus it is apparent that, as stated by Walker on Patents, § 185, "when it becomes necessary to construe a claim narrowly in order that its novelty may not be negatived by the prior art, or its validity otherwise overthrown, courts will give such a narrow construction, if they can do so consistently with the language of the claim and of the description."

From the whole patent it is clear that, to make the claims 2 and 4 effective, the so-called line of cleavage, in applying the power to the stirrer-shaft, must be preserved and therefore read into those claims.

Thus construed, and in view of the absence in the prior art and use of any device showing a wash tub having a cover freed from the weight of the impelling machinery and the so-called line of cleavage at the point where the power is applied to the drive-shaft, which carries the stirrer-shaft, and in view of the other novel features of the claims, we hold the patent to be valid.

Appellant's device is constructed under the Van Wormer patent, No. 939,645, dated November 9, 1909. In his specification, the patentee says:

"The primary object of my present invention is to provide an improved gearing for washing machines of the type specified adapted to be compactly mounted upon the side of the tub, and having such a geared connection with the driving shaft that the tub lid can be raised and lowered at pleasure to remove or replace the agitator mechanism, without stopping the fly-wheel mech-

anism, and having an improved means for securing the detachable connection between the power shaft and the actuating gear therefor."

In its advertising appellant makes this feature of its device the center of its appeal to the trade and, of course, claims it to be a new invention. It also appears that appellant has appropriated other elements of the patent, as, for instance, the lever of the second class, specifically claimed by the patentee, and has in various ways proceeded to ignore the patent. In so doing appellant has been guilty of infringement, and was properly restrained by the trial court.

[5] With regard to the motions to have the Miracle machine decreed to not infringe the claims in suit, or that, in the alternative, all evidence respecting it be stricken out at appellee's costs, we are of the opinion that there was no basis for the motion to have the court decree noninfringement as to said device. The motion to strike out evidence at appellee's cost cannot be here entertained. While the statutes provide for the taxing of costs against those creating unreasonable and vexatious costs, the motion is addressed to the discretion of the trial court. Du Bois v. Kirk, 158 U. S. 58, 15 Sup. Ct. 729, 39 L. Ed. 895; vol. 13, Cent. Dig. § 21.

Some question is raised in the briefs as to the sufficiency of notice before bringing the suit. We are of the opinion that the notice was adequate for the purposes of the suit.

The decree of the District Court is affirmed.